IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20 CV 342 MOC WCM

| | |
|---|---|
| TRACY NANNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| ANDREW SAUL, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings (Docs. 12, 16), which have been referred to the undersigned pursuant to 28 U.S.C. § 636.

## I. Procedural Background

Plaintiff Tracy Nanney ("Plaintiff") filed an application for Supplemental Security Income benefits alleging disability beginning on August 2, 2012. Transcript of the Administrative Record ("AR") at 174-179. Following a hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. AR at 12-24. The Appeals Council denied Plaintiff's request for review of that decision, AR at 1-5, and Plaintiff filed the instant action. Doc. 1. Accordingly, the ALJ's decision is the

1

Commissioner's final decision for purposes of judicial review. See 20 C.F.R. § 404.981.

## II. Five-Step Process

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. In this process, the Commissioner considers each of the following: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001); Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam).

The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant

2

is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

### III. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "morbid obesity, attention deficit hyperactivity disorder (ADHD), schizoaffective disorder, depression, and anxiety." AR at 18. The ALJ further found that Plaintiff had moderate limitations in her ability to concentrate, persist, or maintain pace; adapt or manage herself; and interact with others. AR at 19. Additionally, the ALJ found that Plaintiff had the RFC to:

> perform light work . . . except she is limited to simple, routine, and repetitive tasks of unskilled work. No public interaction and only occasional interaction with supervisors and coworkers. The claimant can stay on task for 2 hours at a time in a low stress work setting, defined as no work dealing with complex decision-making, crisis situations, or constant changes in routine.

AR at 20.

Applying this RFC, the ALJ found that Plaintiff could perform representative jobs that existed in significant numbers in the national economy and therefore Plaintiff had not been under a disability since April 13, 2016, the date the application was filed. AR at 23-24.

3

## IV. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (quoting Mastro, 270 F.3d at 176). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Plaintiff's Assignments of Error

Plaintiff argues that the ALJ erred in two ways. First, Plaintiff argues that the RFC does not properly account for her moderate limitations in

4

concentrating, persisting, or maintaining pace. Doc. 13 at 5. Second, Plaintiff contends that the ALJ erred when assessing whether her statements regarding the intensity, persistence, and limiting effects of her symptoms were consistent with the record before determining the RFC. Id.

VI. Analysis

A. Concentration, Persistence, and Pace

An ALJ who finds a plaintiff has moderate limitations in concentration, persistence, or pace is not automatically required to include a corresponding limitation in the RFC. See Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020); Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). Rather, the ALJ has two options. The ALJ may either (1) include additional limitations in the claimant's RFC to account adequately for the particular mental limitations, or, in the alternative, (2) explain the decision not to limit Plaintiff's RFC further. Shinaberry, 952 F.3d at 121 (explaining that Mascio did not impose a categorical rule requiring a specific RFC regarding concentration, persistence, or pace and stating that an ALJ could explain why such a limitation was not necessary); Rivera v. Berryhill, No. 3:17-CV-00376-GCM, 2019 WL 355536, at *2 (W.D.N.C. Jan. 29, 2019).

Here, the ALJ included certain non-exertional limitations in the RFC; specifically, that Plaintiff could engage in simple, routine, and repetitive tasks of unskilled work, with no public interaction and only occasional interaction

5

with supervisors and coworkers. AR at 20. Additionally, the ALJ found that Plaintiff would be able to "stay on task for 2 hours at a time in a low stress work setting, defined as no work dealing with complex decision-making, crisis situations, or constant changes in routine." AR at 20. Plaintiff takes issue with the ALJ's inclusion of this 2-hour limitation, arguing that "the ALJ fails to explain how, or even whether, he means 2-hours at a time in the context of an 8-hour day." Doc. 13 at 13.

In support of her position, Plaintiff relies on <u>Biddell v. Colvin</u>, No. 1:15-cv-80-MOC, 2016 WL 815300 (W.D.N.C. Feb. 29, 2016), in which remand was ordered by this Court. There, when finding that the ALJ had failed to discuss the plaintiff's ability to stay on task, the Court explained:

> the ALJ specifically adopted the findings of the state agency psychological consultants, who opined that Plaintiff would be able to sustain attention and concentration for only two hours at a time. It is unclear to the court how a finding that Plaintiff would be able to sustain concentration and attention, <u>i.e.</u>, stay on task, for such amount of time translates to a finding that she would be able to successfully do so for a full work week. *Because neither the ALJ's RFC nor his hypothetical to the VE addresses Plaintiff's ability to stay on task, and because it is otherwise unclear to the court how the ALJ has accounted for such ability, remand is appropriate.*
>
> 2016 WL 815300 at *6 (emphasis added).

However also relevant, though not discussed by the parties, is Sizemore v. Colvin, No. 5:15-cv-53-MOC, 2016 WL 483140 (W.D.N.C. Feb. 2, 2016), aff'd., 878 F.3d 72 (4th Cir. 2017). There, the RFC limited the plaintiff to "work in low stress defined as non-production jobs, no fast-paced work like assembly-line; with no public contact." 2016 WL 483140, at *2. In finding that the ALJ's development of plaintiff's RFC complied with the requirements of Mascio, this Court explained:

> Rather than being contrary to the decision in Mascio, the court concludes that the ALJ did precisely what the Fourth Circuit instructed be done in Mascio. Indeed, the ALJ here recognized that RFC meant plaintiff's "ability to do physical and mental work activities on a sustained basis despite limitations from his impairments," A.R. at 21, he gave significant weight to medical evidence that informed his decision, A.R. at 44-45, and adopted that medical opinion in formulating RFC. Id. In turn, that medical opinion from a state agency consultant assessed that plaintiff retained the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods was moderately limited, but nonetheless, plaintiff would be generally able to maintain attention for at least two hours at a time as needed to do simple, routine tasks. A.R. at 142. By assessing that plaintiff could maintain attention for at least two hours at a time as needed to do simple, routine tasks, the medical consultant indicated that plaintiff could stay on task for an eight hour workday. Hawley v. Astrue, No. 1:09-CV-246, 2012 WL 1268475, *7 (M.D.N.C. April 16, 2012) ("Defendant correctly points to Social Security Ruling ("SSR") 96–9p, which provides a guideline for customary breaks during a work-day as follows: '... a

7

> morning break, a lunch period, and an afternoon break at approximately 2–hour intervals. Thus, customary breaks or 'normal breaks,' would reasonably occur approximately every two hours."). The ALJ's RFC determination further referenced and is supported by the opinion of another consultative psychiatric examiner. Such a method of evaluation clearly satisfies the concerns announced in Mascio.
>
> 2016 WL 483140, at *3.

On appeal, the Fourth Circuit affirmed.

Having closely considered these authorities, the undersigned is persuaded that the circumstances of the instant case are more similar to those presented in Sizemore.

Here, when developing Plaintiff's RFC, the ALJ gave "substantial weight" to the State agency psychological consultants. AR at 22 (citing AR at 110 & 122). The consultants evaluated Plaintiff's "sustained concentration and persistence limitations" and found that Plaintiff was not significantly limited in her ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" or her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR at 110 & 122. Significantly, these psychologists concluded that Plaintiff was capable of maintaining "attention and concentration for 2 hours at a time as required for

8

the performance of simple tasks, at least, if motivated to do so." AR at 110 & 122.

Additionally, the ALJ also gave substantial weight to the opinion of Dr. McNulty, the consultative psychologist. AR at 22. Dr. McNulty opined that Plaintiff "would be able to understand, retain and follow simple instructions" and that "[h]er attention and concentration appeared adequate during the interview" despite Plaintiff's reported history of problems with concentration, attention, and distractibility. AR at 306.[1]

An ALJ may appropriately rely on such opinion evidence when considering a claimant's ability to concentrate, persist, or maintain pace. See Norton v. Saul, 1:20-cv-00060-KDB, 2021 WL 861710, at *3 (W.D.N.C. March 8, 2021) ("The ALJ's reliance on the opinion of the state agency medical consultant that [plaintiff] could complete simple tasks even with moderate limitations in CPP satisfies the explanation necessary to support the RFC limitations"); Del Vecchio v. Colvin, No. 1:14cv116-RLV, 2015 WL 5023857, at

---

[1] The ALJ also explained that Dr. McNulty "opined that the claimant would be moderately impaired in her ability to handle stress and interact with coworkers and supervisors." AR at 22 (citing AR 781). Plaintiff argues that the ALJ did not adequately credit Dr. McNulty's statements about Plaintiff's ability to relate to her coworkers and tolerate stress. Doc. 13 at 19. However, in the RFC, Plaintiff was limited to no public interaction, only occasional interaction with supervisors and coworkers, and work in a low stress setting (i.e., work not dealing with complex decision making, crisis situations, or involving constant changes in routine). AR at 20. It therefore appears that Plaintiff's ability to interact with coworkers and deal with stress were addressed in her RFC.

9

\*6 (W.D.N.C. Aug. 25, 2015) (ALJ's explicit reliance on non-examining state agency consultant's mental functional capacity assessment adequately explained "why Plaintiff's limitations in concentration, persistence, or pace did not translate into any additional restrictions…."); Tanner v. Commissioner of Social Security, 602 Fed. Appx. 95, 101 (4th Cir. 2015) (unpubl.) (while "[a] 'non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted *by all of the other evidence in the record*[,]' 'the testimony of a nonexamining physician can be relied upon when it is consistent with the record.'") (quoting Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) (emphasis in Smith)).

Because here, as in Sizemore, the ALJ explicitly relied on particular opinions setting forth Plaintiff's ability to sustain concentration, persistence, or pace for defined tasks in a specified work environment, and such limitations were reflected in Plaintiff's RFC, "[t]he court is not left to guess" at the foundations for the ALJ's findings regarding Plaintiff's ability to stay on task. Pegg v. Berryhill, No. 1:16-cv-383-MOC, 2017 WL 3595487, at \*3 (W.D.N.C. Aug. 21, 2017); see also See O'Dell v. Saul, No. 5:20-cv-00048-KDB, 2021 WL 1233480, at \*4 n.3 (W.D.N.C. April 1, 2021) (ALJ's assessment that plaintiff could stay on task for two-hour intervals established that plaintiff could work for an entire eight-hour day); Beasley v. Berryhill, No. 1:17-CV-00294-RJC, 2019 WL 1330928, at \*5 (W.D.N.C. Mar. 25, 2019) ("Because the ALJ's

10

limitation of two-hour work segments addressed the moderate CPP limitations, the Court does not find reversible error in the ALJ's failure to address Plaintiff's ability to complete a full workday"); Buckner v. Saul, No. 1:20-cv-00002-FDW, 2021 WL 467204, at *5 (W.D.N.C. Feb. 9, 2021) ("The ALJ limited Plaintiff to an RFC of 'simple, routine, and repetitive tasks' for two-hour segments at a time which directly accounts for his limitations in concentration, persistence, and pace"); Funderburk v. Saul, No. 3:20-cv-00334-FDW, 2021 WL 1721871, at *5 (W.D.N.C. April 30, 2021).[2]

### B. Plaintiff's Statements Regarding Her Symptoms

SSR 96-9p requires an ALJ to set out "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence." SSR 96-8P (S.S.A.), 1996 WL 374184.

Here, the ALJ explained that Plaintiff testified she is "unable to be around large crowds of people because of panic attacks and social anxiety," has

---

[2] Plaintiff also points out that during the administrative hearing, she testified that she has a panic attack any time she is by herself, and that the RFC developed by the ALJ would require her to be by herself for a substantial portion of the day. Doc. 13 at 20. In discussing Plaintiff's ability to interact with others, the ALJ noted that a third-party function report completed by Plaintiff's mother indicated that Plaintiff spent time with others and had no difficulty getting along with family, friends, and neighbors. AR at 19. Additionally, the ALJ explained that Dr. McNulty's evaluation indicated that Plaintiff "can still interact appropriately with others in both private and public settings…" AR at 19; see also AR at 22.

"severe mood swings and hears voices," and "has difficulty being out in public." AR at 20. The ALJ went on to explain that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were "not fully consistent" with psychiatric and mental status examination findings, her testimony regarding daily activities and her abilities, her lack of recent mental health treatment, and her work history. AR at 22.

Plaintiff argues that the ALJ erred by failing to set out a "reasoned discussion" with citation to specific evidence for his conclusion that Plaintiff's statements concerning the effects of her symptoms were not entirely consistent with the medical record and other evidence, in violation of Social Security Ruling 96-8p. See Doc. 13 at 20.

However, when considering Plaintiff's symptoms, the ALJ discussed Plaintiff's medical records related to Plaintiff's mental health. Specifically, the ALJ noted that treatment records related to a hospital stay in 2013 reflected that Plaintiff was functionally independent, alert, able to understand directions, and was without any emotional or behavioral needs. AR at 21 (citing AR 2068). Additionally, the ALJ discussed mental status assessments and psychiatric findings related to Plaintiff's treatment at Monarch, CLECO Medical Center, Carolinas Medical Center, and an April 2018 emergency room visit, and cited specific portions of these records indicating that Plaintiff was alert, oriented, and had intact/normal memory, judgment, and affect. AR at 21-

12

22 (citing Monarch records, AR at 7796, 7801, 7806; CLECO records, AR at 7808, 7811, 7815, 7816-7817, 7820-7821; Carolinas Medical records, AR at 1283, 1357, 1424, 1457; and emergency room records, AR at 5964). The ALJ also examined the report of Dr. McNulty, who conducted a psychological evaluation and found that Plaintiff's behavior was normal, and she was fully oriented. AR 21 (discussing AR at 777-781).

Additionally, the ALJ discussed Plaintiff's work history and hearing testimony. AR at 22. The ALJ explained that Plaintiff testified that she is able to drive and ride the family horse, and that she helps with feeding and taking care of that horse as well as two dogs. AR at 22. The ALJ also explained that Plaintiff had not had mental health treatment since 2014, and that Plaintiff "did not exhaust all efforts to seek treatment from free or subsidized clinics." AR at 22.

The ALJ thus met the requirements of Social Security Ruling 96-8p.[3]

---

[3] Additionally, Plaintiff contends that the ALJ improperly ignored evidence that contradicted his conclusions. Specifically, Plaintiff contends that the ALJ's conclusions that Plaintiff "never really worked" was incorrect, and that the ALJ failed to consider adequately Plaintiff's traumatic early childhood, education, and "limitations which led to loss of custody of her children" as factors that "tend to explain why [Plaintiff] was not able to work since much earlier in her life." Doc. 13 at 23. However, the ALJ did not base his conclusion regarding the consistency of Plaintiff's statements solely on Plaintiff's lack of recent work history, and Plaintiff does not argue that her early childhood experiences resulted in functional limitations greater than those found by the ALJ. With respect to Plaintiff's education, Plaintiff testified during the administrative hearing that she finished high school and had no difficulty reading or writing. AR at 60.

## VII. Recommendation

Considering the foregoing, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 12) be **DENIED**, and that the Commissioner's Motion for Judgment on the Pleadings (Doc. 16) be **GRANTED**.

Signed: June 25, 2021

W. Carleton Metcalf
United States Magistrate Judge

14

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).